**Justin DILLON, Appellant**

v.

**CITY OF ERIE.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 2013.
Decided Jan. 7, 2014.

Joshua Prince, Bechtelsville, for appellant.

Gregory A. Karle, Solicitor, for Erie, appellee.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY President Judge PELLEGRINI.

 Justin Dillon (Dillon) appeals the order of the Court of Common Pleas of Erie County (trial court) denying his request for a preliminary injunction.[1] We affirm in part and reverse and remand in part.

In April 2013, Dillon, the legal owner of a number of firearms, applied for a permit to hold a pro-firearms rally in West Perry Square, City of Erie (City). Dillon had previously held rallies on July 1, 2012, January 23, 2013, and February 23, 2013, at West Perry Square and he possessed firearms at those rallies. While he obtained a permit for the rally to be held on June 22, 2013, the City's Solicitor, Gregory Karle, told Dillon that neither he nor any other person would be allowed to carry firearms during the rally, and that if they did, they would be cited under Section 955.06(b) of the City's Ordinances prohibit-

ing hunting and the use or possession of firearms in City parks which states:

(b) *Hunting and Firearms.* No person in a park shall hunt, trap or pursue wild life at any time. No person shall use, carry or possess firearms of any descriptions, or air-rifles, spring guns, bow and arrows, slings, paint ball weapons or any other forms of weapons potentially inimical to wild life and dangerous to human safety, or any instrument that can be loaded with and fire blank cartridges, or any kind of trapping device. Shooting into park areas from beyond park boundaries is forbidden.[2]

The permit also stated that "PLEASE NOTE: BY CITY ORDINANCE, NO WEAPONS (GUNS) ARE PERMITTED IN ANY CITY PARK." (Reproduced Record (R.R.) at 64a). In May 2013, while being interviewed by the media, the City's Solicitor stated that those procuring a permit may protest, but "[t]hey can't be armed. If one is armed, they're subject to a summary offense. The fine is one hundred to three hundred dollars and the police are able to enforce the ordinance." (*Id.* at 118a).

In May 2013, Dillon filed a complaint for declaratory judgment and injunctive relief seeking a preliminary and a permanent injunction in the trial court to prevent the

1. "The essential prerequisites of a preliminary injunction are as follows: (1) the injunction is necessary to prevent immediate and irreparable harm not compensable in money damages; (2) greater injury will result from refusing the injunction than from granting it; (3) the injunction restores the parties to *status quo ante;* and (4) the activity sought to be restrained is actionable, and the plaintiff's right to relief is clear." *The Woods at Wayne Homeowners Association v. Gambone Brothers Construction Co., Inc.,* 893 A.2d 196, 204 (Pa. Cmwlth.), *appeal denied,* 588 Pa. 767, 903 A.2d 1235 (2006). The *status quo ante* to be preserved by a preliminary injunction is the last actual, peaceable, lawful, noncontested

status which preceded the pending controversy. *Id.* at 204 n. 10.

2. In turn, Section 955.99 of the City's Ordinances provides:

Whoever violates any provision of this article or any regulation legally promulgated under authority thereof, upon prosecution before any District Justice of the City shall be fined not less than ten dollars ($10.00) nor more than three hundred dollars ($300.00), together with the cost of prosecution, or in default of payment of same shall undergo imprisonment not to exceed ninety days.

City's enforcement of Section 739.01 of the City's Ordinances, which deals with the reporting of stolen firearms,[3] as well as Section 955.06(b), which prohibits hunting and firearms in the City's parks. Dillon alleged that the City's Ordinances and proposed actions are preempted by Section 6120(a) of the Uniform Firearms Act (Act),[4] 18 Pa.C.S. § 6120(a), which states:

> (a) **General rule.**—No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

At the same time he filed his complaint, Dillon filed a motion for preliminary injunction. The City filed an answer and new matter to Dillon's complaint and a response to his motion.

**■** The trial court held a hearing on Dillon's motion and the parties stipulated to the foregoing underlying facts. The trial court denied the preliminary injunction based on its determination that Dillon had not met the grounds for a preliminary injunction because, among other reasons, he did not establish[5] the likelihood of his prevailing on the merits because Section 6120(a) did not clearly preempt Section 955.06 of the City's Ordinances because "the ordinance does not (as § 6120 seems to) regulate gun ownership, registration, sales, purchases, licensing, transfer or transport of firearms." (Trial Court Opinion at 7). The trial court determined that "it is not clear that § 6120, nor any other state statute, was intended to prohibit a municipality from regulating possession of firearms in a public park as a reasonable exercise of its police powers...." (*Id.*). The trial court also determined that "[a]s

---

**3.** Section 739.01 of the City's Ordinances states:

> No person who is the owner of a handgun that is lost or stolen shall fail to report the loss or theft to an appropriate local law enforcement official within seventy-two (72) hours after the owner discovers the loss or theft.

In turn, Section 739.99 provides:

> Any person who violates this article shall be subject to the following:
> (a) For the first violation such person shall be subject to a fine of not more than five hundred dollars ($500.00).
> (b) For the second and subsequent violations thereafter such person shall be subject to a fine of not more than one thousand dollars ($1,000.00) or imprisonment for not more than ninety (90) days, or both.

**4.** Dillon also claimed that the Ordinances violated his rights as guaranteed by Article 1, Section 21 of the Pennsylvania Constitution and the Second Amendment to the United States Constitution, and that the City's actions constitute official oppression as prohibited by Section 5301 of the Pennsylvania Crimes Code, 18 Pa.C.S. § 5301.

**5.** The trial court also found that Dillon did not establish immediate, irreparable harm because there was no immediate threat that he would be cited for violating the City's Ordinances; that a greater injury would occur by refusing to grant the injunction because he could still assemble on June 22, 2013, for the rally albeit without possessing a firearm; there was no need to preemptively enjoin the City's proposed actions before the issues were decided on the merits, and because open possession of loaded firearms in a public park affects the public interest and the questions regarding the legality and constitutionality of the City's Ordinances will be determined after a full development of the issues. (Trial Court Opinion at 5–8).

The trial court did find that Dillon had demonstrated that a preliminary injunction would restore the status quo, quoting *Wyland v. West Shore School District,* 52 A.3d 572, 584 (Pa.Cmwlth.2012) ("For purposes of injunctive relief, the status quo 'is the last peaceable and lawful uncontested status preceding the underlying controversy between the parties or the alleged wrongful conduct of the parties sought to be enjoined.'") (citation omitted). (Trial Court Opinion at 6).

to Ordinance 739.01, dealing with the reporting of stolen guns was not ripe and [Dillon] lacks standing as he does not allege that a gun was lost or stolen. Therefore, it has no application to [Dillon] now, or in the immediate future." [6] (Trial Court Opinion at 3). Dillon then filed the instant appeal of the trial court's order.[7]

## I.

### A.

■ Regarding the denial of his request for a preliminary injunction to be allowed to possess firearms in City parks, central to Dillon's argument is that municipal firearms regulations, such as Section 955.06(b), is preempted by Section 6120(a) of the Act, and the enactment of such a law is a *per se* irreparable injury. He argues that Section 6120(a) clearly states, in pertinent part, that "[n]o . . . municipality may in any manner regulate the lawful . . . possession of firearms . . . when carried . . . for purposes not prohibited by the Laws of this Commonwealth." 18 Pa.C.S. § 6120(a).

In *Ortiz v. Commonwealth*, 545 Pa. 279, 681 A.2d 152 (1996), the Supreme Court considered whether two home rule municipalities, Philadelphia and Pittsburgh, could regulate by ordinance the ownership of so-called assault weapons. The Supreme Court explained:

> The sum of the case is that the Constitution of Pennsylvania requires that home rule municipalities may not perform any power denied by the General Assembly; [through Section 6120] the General Assembly has denied all municipalities the power to regulate the ownership, possession, transfer or possession [sic] of firearms; and the municipalities seek to regulate that which the General Assembly has said that they may not regulate. The inescapable conclusion, unless there is more, is that the municipalities' attempt to ban the possession of certain types of firearms is constitutionally infirm.

*Ortiz*, 545 Pa. at 283–84, 681 A.2d at 155. The Supreme Court concluded:

> Because the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern. The constitution does not provide that the right to bear arms shall not be questioned in any part of the commonwealth except Philadelphia and Pittsburgh, where it may be abridged at will, but that it shall not be questioned in any part of the commonwealth. Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the

---

6. On June 22, 2013, Dillon held and attended the rally at the City's West Perry Square. Dillon and seven other attendees were issued summary citations for violating Section 955.06 of the City's Ordinances. (R.R. at 166a–167a). After a trial, with the City's Solicitor acting as a special prosecutor, Dillon and the others were adjudged guilty of the summary offenses and a fine and court costs were imposed. (*Id.* at 5a–27a). In June 2013, Dillon also applied for another permit to hold another pro-firearms rally in the park on September 14, 2013. (*Id.* at 117a). The record does not indicate whether or not that rally took place.

7. Our scope of review of the grant or denial of a preliminary injunction is a narrow one—we "do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [Court]." *The Woods at Wayne Homeowners Association*, 893 A.2d at 204, *citing Mazzie v. Commonwealth*, 495 Pa. 128, 133, 432 A.2d 985, 988 (1981).

General Assembly, not city councils is the proper forum for the imposition of such regulation.

*Id.* at 287, 681 A.2d at 156.

In *Clarke v. House of Representatives,* 957 A.2d 361 (Pa.Cmwlth.2008), *aff'd,* 602 Pa. 222, 980 A.2d 34 (2009), Philadelphia council members filed a complaint in our original jurisdiction seeking a declaration regarding the validity of seven ordinances limiting handgun purchases and prohibiting straw purchases; mandating the reporting of lost or stolen firearms; requiring a license to acquire or to bring a firearm into Philadelphia which must be renewed annually; permitting firearm confiscation from one posing a risk of harm; prohibiting the possession or transfer of assault weapons; and requiring a person selling ammunition to report the purchase and purchaser to the police department. The council members argued, *inter alia,* "that Section 6120 does not apply to any of the Ordinances to the extent they do not regulate the *carrying or transporting* of firearms." *Clarke,* 957 A.2d at 363 (emphasis in original). In considering this claim, we noted the Supreme Court's holding in *Ortiz* and *Schneck v. City of Philadelphia,* 34 Pa.Cmwlth. 96, 383 A.2d 227, 229–30 (1978), in which we had addressed an ordinance regulating the acquisition and transfer of firearms and held that a prior version of Section 6120 "clearly preempts

local governments from regulating the lawful ownership, possession and transportation of firearms...."

In rejecting the council members' claims, we explained:

The Ordinances before us are not materially different from those presented in *Schneck* and *Ortiz.* Each one seeks to regulate firearms-an area that both Section 6120 and binding precedent have made clear is an area of statewide concern over which the General Assembly has assumed sole regulatory power. As we stated in *Schneck,* "it is a well-established principle of law that where a state statute preempts local governments from imposing regulations on a subject, any ordinances to the contrary are unenforceable." 383 A.2d at 229.

*Clarke,* 957 A.2d at 364.

▪ Based on the foregoing, Section 6120(a) of the Act does preempt Section 955.06(b) by its own terms and by the case law and precludes the City from regulating the lawful possession of firearms. As a result, the trial court erred in determining that Dillon failed to show that he has a clear right to relief[8] because Section 6120(a) preempts all firearms regulation thereby prohibiting the City from regulating the possession of firearms in its parks via Section 955.06(b) of the City's Ordinances.[9]

---

**8.** "A party's right to relief is clear if the party seeking the preliminary injunction is likely to prevail on the merits of the permanent injunction." *The Woods at Wayne Homeowners Association,* 893 A.2d at 204, *citing Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 647, 828 A.2d 995, 1001 (2003).

**9.** Not raised by the City is Section 3710 of the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 38710, which provides, in pertinent part, that the City "shall at all times be invested with the power and authority to adopt suitable rules and reg-

ulations concerning the use and occupation of [its] parks and playgrounds by the public generally...." It could be argued that the City may be empowered under that grant of power from the State to regulate the possession of firearms in its parks pursuant to its proprietary power to control conduct that takes place on its property rather than through an ordinance of general application enacted pursuant to its general police powers. Similarly, Section 11.215 of the regulations of the Commonwealth's Department of Conservation and Natural Resources, 17 Pa.Code § 11.215, generally prohibits "[p]ossessing an uncased de-

## B.

■ Dillon next claims that the trial court erred in determining that he did not demonstrate that he would suffer an immediate and irreparable injury thereby supporting a preliminary injunction. As noted above, Pennsylvania law does not require a person to be prosecuted to find that he has suffered irreparable harm, and a litigant is relieved of demonstrating this prerequisite where, as here, the only remedy available was prosecution under Section 955.99 of the City's Ordinances based on his violation of Section 955.06(b). *See City of Erie v. Northwestern Pennsylvania Food Council,* 14 Pa.Cmwlth. 355, 322 A.2d 407, 412 (1974) ("This traditional prerequisite to the issuance of an injunction is not applicable where as here the Legislature declares certain conduct to be unpermitted and unlawful....").

■ Moreover, "[t]he argument that a violation of law can be a benefit to the public is without merit. When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury." *Pennsylvania Public Utility Commission v. Israel,* 356 Pa. 400, 406, 52 A.2d 317, 321 (1947). *See also Devlin v. City of Philadelphia,* 580 Pa. 564, 579, 862 A.2d 1234, 1242 (2004) ("[I]n addition to the constitutional and statutory limits on a municipality's power, a municipality is also prohibited from exercising powers in violation of basic preemption principles, which dictate that 'if the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation in that area is permitted.' ") (citation omitted).

vice, or uncasing a device, including a firearm, ... that is capable of discharging or propelling a projectile ..." in state parks,

## C.

■ Because Section 6120(a) prohibits the City from regulating the lawful possession of firearms, an irreparable injury is present in this case. Likewise, the City's unlawful regulation of the lawful possession of firearms shows that a greater injury will occur by refusing to grant the injunction because Section 955.06(b) of the City's Ordinances is unenforceable; the injunction is reasonably suited to abate the offending activity by enjoining the enforcement of this unlawful and unenforceable ordinance; and the injunction will not adversely affect the public interest because the City was prohibited from enacting Section 955.06(b) and the ordinance is, again, unlawful and unenforceable. *See City of Erie,* 322 A.2d at 412 ("For one to undertake and pursue such statutorily prohibited conduct constitutes irreparable injury which is the proper subject of injunctive relief." (*citing Israel*)). Based on the foregoing, it is clear that the trial court's basis for denying the instant preliminary injunction with respect to enjoining the enforcement of Section 955.06(b) of the City's Ordinances is erroneous because that ordinance is unlawful and unenforceable.

## D.

■ While the requested injunctive relief cannot be granted with respect to the June 22, 2013 rally, this appeal is not moot because the motion requested that enforcement of Section 955.06(b) be enjoined generally and Dillon was cited at the rally and continues to be subject to prosecution for violating its provisions. "[T]here is an exception to the general rule that a case or controversy must exist at all

subject to a number of enumerated exceptions.

stages of appellate review. If one of the parties to the controversy will continue to suffer some detriment from the lower court's decision, the appeal will usually be heard." *Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060, 1070 (1976). We cannot enter an order granting the injunction, but will reverse the trial court and remand the matter to the trial court with the direction to enter an order granting Dillon's request for a preliminary injunction and to dispose of his request for a permanent injunction in accordance with this opinion. *See, e.g., Mitchell's Bar & Restaurant, Inc. v. Allegheny County,* 924 A.2d 730, 739 (Pa.Cmwlth.2007).

## II.

 Finally, Dillon argues that the trial court erred in determining that he did not have standing to challenge Section 739.01 of the City's Ordinances, requiring handgun owners to report the loss or theft of a handgun to an appropriate local law enforcement official within 72 hours after its discovery. While one does not have to wait for an actual prosecution to have standing, *City of Erie,* "[i]njunctive relief is not available to eliminate a possible remote future injury or invasion of rights." *Jamal v. Department of Corrections,* 121 Pa.Cmwlth. 42, 549 A.2d 1369, 1371 (1988), *appeal denied,* 520 Pa. 620, 554 A.2d 512 (1989).

 In this case, Dillon was threatened with the actual enforcement of Section 955.06(b) and the penalties outlined in Section 955.99, thereby conferring standing with respect to those provisions. Likewise, in *City of Erie,* the Northwestern Pennsylvania Food Council was required to make immediate changes in their packaging in order to comply with the ordinance at issue in that case. However, there is no allegation that Dillon has lost his firearm or will lose his firearm in the future, and there is no indication that Section 739.01 or the penalties outlined in Section 739.99 will ever be applicable to him. The trial court did not err in determining that he did not have standing to challenge Section 739.01 of the City's Ordinances. *National Rifle Association v. City of Philadelphia,* 977 A.2d 78, 81–82 (Pa.Cmwlth.2009), *appeal denied,* 606 Pa. 677, 678, 996 A.2d 1068, 1069 (2010). As a result, the trial court properly denied preliminary injunctive relief with respect to Section 739.01 because Dillon does not have standing to obtain the requested relief.

Accordingly, the trial court's order denying Dillon's request for a preliminary injunction is affirmed in part and reversed in part and the case is remanded to the trial court with the direction to enter an order granting Dillon's request for a preliminary injunction enjoining the enforcement of Section 955.06(b) and to dispose of his request for a permanent injunction enjoining its enforcement in accordance with this opinion.

### ORDER

AND NOW, this *7th* day of *January,* 2014, that portion of the order of the Court of Common Pleas of Erie County dated June 20, 2013, at No. 11482–2013, denying preliminary injunctive relief with respect to the enforcement of Section 739.01 of the City of Erie's Ordinances is affirmed; that portion of the order denying preliminary injunctive relief with respect to the enforcement of Section 955.06(b) of the City's Ordinances is reversed; and the case is remanded to the Court of Common Pleas of Erie County with the direction to enter an order granting Justin Dillon's request for a preliminary injunction and to dispose of his request for a permanent injunction enjoining the enforcement of Section

955.06(b) in accordance with the foregoing opinion.

Jurisdiction is relinquished.

DISSENTING OPINION BY Judge BROBSON.

I join Part I of the majority's opinion.

With respect to Part II, the majority's disposition of the issue is consistent with the current state of the law, addressing gun owner standing to challenge a local ordinance relating to mandatory reporting of lost or stolen firearms. *See Nat'l Rifle Ass'n v. City of Phila.*, 977 A.2d 78 (Pa. Cmwlth.2009) (en banc), *appeal denied*, 606 Pa. 677, 678, 996 A.2d 1068, 1069 (2010). I, however, continue to believe that our precedent in this regard is in error and should be revisited. *See Nat'l Rifle Ass'n v. City of Pittsburgh*, 999 A.2d 1256, 1260–63 (Pa.Cmwlth.2010) (Brobson, J., dissenting), *appeal denied*, 611 Pa. 629, 23 A.3d 543 (2011). It is for this reason that I must respectfully dissent from that portion of the majority's opinion.

Judges LEAVITT and McCULLOUGH join in this dissenting opinion.